The first case for argument this morning is 19-1164 Uber Technologies v. X One. Mr. Dreyer. Good morning, Your Honors, and may it please the Court. Chris Dreyer for Uber Technologies, Inc. The Board's decision upholding the challenged claims of the 593 patent should be set aside. The Board identified only a single difference between the prior Okubo reference and the challenged claims. That difference was a binary choice regarding where to perform a basic data processing step. In this case, where to plot locations on a map, either on a server before you transmit the information. On page 25 of the blue brief, you argue that Konishi shows that server-side plotting was one of only two identified predictable solutions for displaying a plotted map in a location sharing application. But the Board found that this argument represented impermissible hindsight. Is there any record evidence that supports that server-side plotting is a mere design choice and implementation detail? I think there is, Your Honor, and the evidence is, the record evidence first of all starts with the 593 patent itself, which doesn't attribute any significance to this choice. The written description is totally silent about how to implement the teachings and the functionality of the 593 patent, especially with regards to server-side versus terminal-side plotting. It doesn't give it any significance. And so that by itself already tells you that the patentee was relying on the knowledge of the person of skill and the art to be able to know how to do that and to know whether that would be suitable for their goals. Second of all, beyond the 593 patent itself, there is the references of Kubo and Konishi, which disclose the two alternative implementations under the Board's own findings. Beyond that, there's the testimony of Uber's expert, Dr. Bartone, who explained that there were several design choices involved in implementing these systems. And I believe that's at page 1068 to 1069 of the appendix. And he explains that a person of ordinary skill and the art would have considered it an obvious design choice to have server-side software, for example, software on the position information storage system 5 in Okubo, obtain a map, plot the location of group members, and then transmit the map. You said at page 37 that the Board erroneously thought you needed to provide sufficient rationale to combine Konishi's teachings in combination with Okubo. Did you not need to establish motivation to combine? I think that's not quite right. We did need to establish motivation to combine, but what KSR says is that in this type of a situation where you have a finite number of identified, predictable solutions, that provides, and I'm just going to read right now. I know you don't think there's any difference between them, but they sound substantially different to me being on a base or on the mobile. The Supreme Court says in KSR, and I'm reading from page 421 of the opinion, is that in this situation where there's a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue known options. Good reason, that is motivation. So when you have that, when you've established those predicate facts that there is a finite number of identified, predictable solutions that is responsive to a market pressure, that suffices to show motivation to combine. Supposing they're finite, predictable solutions and they're totally different. I think the fact of whether they're totally different or not is not really the right inquiry. It's less whether they're different and more whether the difference is patentably significant. If the patentee here had come up with some previously unknown advantage to server-side plotting and had described that in her specification, then we would have a very different case. Even if the patent itself was silent and X1 had decided to introduce evidence of unexpected results or other secondary considerations, we still might have a very different case. But here, there's just none of that. There's nothing pointing to this choice being significant in any way. But there's no question that there's a motivation to have a map on the mobile device. The only question is, does the map get there because it's created the server or on the mobile device, right? I think that's right. I mean, the map is going to have to get on the mobile device somewhere. So I think the real question is where you perform that plotting step. You could either send the map separately and then do the plotting step on the device. Or you could do the plotting step on the server and then send it all at once. Either way, you're transmitting all the same information and you're just changing the order of operations slightly. Now, again, to get back to what I was just saying to Judge Walloff's question, this is a particularly clear case because there are no secondary considerations. There is no allegation of teaching away. Both solutions to this problem are known in the prior and that's undisputed. And so it falls squarely within KSR and with this court's cases that apply KSR to find that a feature of the claims is an obvious design choice. For example, in the ECO, Brands, Assist, CRFD, UFA, and WIRES cases, there were only two options. That's the same here. Both choices were shown to be known in the prior art, just like in the Assist, WIRES, and slot speaker cases. As in the Perfect Web case, this is not a situation where we need to develop an unexpected new technological approach. In fact, the patent itself says the invention does not require development of new cell phone or PDA technology. Now, one of the cases you cite, CRFD research, seems very, very close to this case. I think it is. The other side's response, as far as I recall, was simply to say, well, the parties there weren't disputing that there were only two design choices. Your response to that? So I may have missed your question, but I don't think there's any dispute in this case that there's only two design choices. Well, there is. On 38 of red, 38 and 39, I think, is the only discussion of this case, which, as I said, I think is very, very close to our case. And it says the patent owner admitted that design choices were equally likely. Okay, now I understand. That is not true here, where the proposed alteration will result in wholesale modification of Okubo and et cetera, et cetera. So before the board, it was Uber's view, and we still think this is right, although we haven't challenged the board in this respect, that Okubo was silent one way or the other about where it does apply. Yeah, but that's the substantial evidence. Right, exactly. And that's why we haven't challenged that. Our view is that even assuming the board is right about that, it doesn't change the result. So I think that is a distinction from CRFD, but it's not a distinction that changes the result, because it's always going to be, in most obviousness cases, a modification. If it didn't need to be a modification, we'd be talking about anticipation, not obviousness. So the fact that the board found it to be a wholesale modification rather than a design choice is really a false dichotomy, because it's usually going to be that. You may have situations like CRFD where the prior is just silent, and we thought that was the case here. But even under the board's approach where they read Okubo as doing terminal side plotting, it's still not a difference that actually matters. One thing that seemed to matter to the board was that Okubo was successful on its own. So the issue here is whether or not there was motivation, and the board seems to me relied on that. Do you think that was a valid assessment by the board? I think the board relied almost entirely on that fact. And I think that was not a valid basis for the board's decision, because, again, it's usually going to be the case that a prior reference is achieving its objectives. If it's a prior patent, then it's got to have an enabling disclosure. So where was the board coming from? I mean, they've got considerable experience in evaluating these cases, including the motivation. So what was this about in this case? To be honest with you, I don't really know the answer to that. I think the board became really fixated on this idea that we were starting with Okubo, and then the inquiry was whether to modify it. But that was never really the argument Uber was making. Uber's argument was always that if you start with both of these references in front of you, and you look at their teachings together, it confirms that this is just a design choice, and you could go either way. I think, you know, I don't want to put my friends on the other side too much, but they tried to cast our argument more in the modifying Okubo sense, and the board, I think, bought into that wrongly. I think you're just about in rebuttals. All right, I'll reserve the rest of my time. Thank you. Thank you, and may it please the court, Dory Hines on behalf of X1. Judge Prost, I wanted to address a question you just asked about where the board was coming from in its analysis. Did you disagree that that was their assessment or a principal basis of their assessment was that Okubo was working just fine, it was successful, so therefore there would be no motivation to fuss around with it? Well, what the board was doing was considering Uber's arguments. And what Uber said was, the primary reference does not need modification. And that's at appendix 2754. Well, let's look at the board opinion and what it said on that. Did they cite that language? They do. Well, on page 22, that may be where you want to go. It says, moreover, petitioner asserts that based on Okubo's teachings alone, a person of ordinary spirit will have a reasonable expectation of success in implementing Okubo. Okubo was successful in achieving this result. That's right. But why does that get you to the legal conclusion that I think maybe you'll disagree, that we agree that the board made, was that because Okubo was successful, there would have been no motivation to look elsewhere. Well, the board goes on to say at appendix 22, petitioner argues that the primary reference does not need modification. That would all be true every time. There are two design choices, each of which is satisfactory. You wouldn't need to modify one of those choices, but you'd still have the alternative to it. And the cases seem to suggest that having two alternatives, each of which is satisfactory, leads to a finding of obviousness. Well, there are two points here, and let me address both. Uber's argument was that Okubo did not need modification and that it was looking to Konishi just for implementation details, and the board rejected that and said Okubo discloses implementation details and discloses a system that operates correctly. As to design choices, what the board said was this represented impermissible hindsight and represented a wholesale modification to Okubo. Said that on appendix 22 and 23. Okay, I know that that's what the board said, but it looks from the record here as though we have two alternatives here. It's not clear whether either one of them is better than the other, and our cases seem to suggest where that's the situation, that that leads to a finding of obviousness. Well, respectfully, Your Honor, what the PTAB relied on in concluding that Konishi would be a wholesale modification of Okubo at appendix 2367, this was the declaration of Uber's expert at paragraph 86, and this is relied on by the PTAB at appendix 23. Do you agree that if you have two equally satisfactory design choices that that can lead to a finding of obviousness? That's true, but that's not the case here. Okay, why is that not the case here? Because one of skill in the art, as X1's expert said, would not have been motivated to send maps in Okubo. And why is that? Because Okubo is related to a completely different system. Okubo, as the PTAB found— I'm not understanding how that's consistent with the concession that you just made. Well, because in this case, the design choices are not equally acceptable. These are not recognized alternatives that would be equally successful. The modification of Okubo with Konishi would not be successful. Does the patent say that one's preferable over the other? Does the 593 patent? Yeah. The 593 patent does not say that, nor is that required. Uber's reference— Do you have any evidence that one was preferable over the other? Well, as the PTAB recognized, what Uber— Konishi would be unacceptable because Okubo looked to save bandwidth, decrease the risk of incomplete data transmissions, improve efficiency, was more reliable, and would avoid unpredictability. These are statements and evidence that the PTAB credited from X1's expert in explaining why Konishi was not a design choice for Okubo. That's accepted and referenced by the PTAB on appendix page 23. Where is that on page 23? Are we talking about the DG— You spend a lot of time on your brief talking about this problem with modifying Okubo, right? The DGPS? That's right. You spent a lot of time on it, but I didn't see— What you're suggesting is what the expert said. I didn't see the boards adopting any of those findings. I didn't see the board making any findings with respect to the DGPS system. And you seem to rely heavily on that, but I don't see where the board did. If you look at appendix 23, what the board says on the second line, Petitioner does not identify any teaching or suggestion in Okubo that a plotted map is transmitted from DGPS Station 4 of Figure 1 or transmitted from anywhere else. In addition, the board cites Exhibit 2004, paragraph 86, and that's at appendix 2367. There, X1's expert is addressing DGPS systems, stating they did not have the bandwidth to transmit map data. He also says one skilled in the art would have applied a technique that could be performed over the low data transmissions of DGPS systems. Based on what the— What I'm saying is look at that paragraph on appendix 23. Towards the end of the paragraph, it says, and further as discussed above, the record supports a skilled artisan's understanding that Okubo sufficiently teaches the implementation of plotting the locations of group members on a map at its mobile terminal. Okay. Therefore, we are not persuaded by Petitioner's assertion that one of the ordinary skilled in the art would seek out Kameshi as a design choice for combination. I don't—I guess— Your Honor, what— Just because it teaches—the fact that a reference teaches one solution doesn't foreclose a design choice, right? I'm not seeing the connection the board was making there. Well, the board was making the connection to the argument Uber actually made. I mean, Uber said the primary reference does not need modification. Uber said that Okubo teaches everything but omits implementation details. Okay. And what the board said was, that's wrong. Okubo does teach implementation details and teaches them— I don't understand the relevance of this. Of course, you know, Okubo teaches one alternative here and it doesn't need modification since that alternative is okay. But there's another alternative, which is to do it on the server, right? And what the PTAB said was that that was rejected, that design choice argument was rejected because it represented impermissible hindsight and a wholesale modification to Okubo. I understand what they said, but where is the suggestion that this design choice wouldn't work equally well? Well, from what the PTAB relied on, that's at appendix 2367, which is paragraph 86 of X1's expert. In essence, it wouldn't send enough data fast enough. Yes, because DGPS was a low data rate system that could not send maps It could only send position information and coordinates. It would not and could not send maps. As a result, there was not a successful— there could not be a successful implementation of a design choice with a completely separate system. These were not two known design choices that were readily interchangeable. And the evidence submitted and accepted by the PTAB recognizes that and recognizes the substantial difference in bandwidth, in the risk of incomplete data transmissions. If you forced a system to send a map that's suggested in Konishi with the system in Okubo, you would not have a successful implementation because you would have incomplete data transmissions. Or it would be so slow that it wouldn't work for the design purpose. That's exactly right. And that was the evidence that was submitted and accepted by the PTAB in finding that Konishi was not an acceptable, workable choice for the Okubo system. You know, you rely on 86, I guess. I found 82 and 83 particularly enlightening regarding the rates. In fact, Your Honor, there's a substantial section of Mr. Sturz's declaration that addresses why DGBS systems would not be implemented with a solution such as in Konishi. And that's addressed at paragraph 77 to 91 of his declaration, which is at appendix 2361 through 2373. And Your Honor mentioned paragraphs 82 and 83, and that is correct. I mean, that's, of course, what I was saying to you. So where did the board make those findings? Well, what the board said was that it would be a wholesale modification. The board specifically pointed to paragraph 86 of Mr. Sturz's declaration. Right. And that's the only citation or reference of reliance on that, right, in the board's opinion? And they say, the record supports a skilled artisan's understanding that Okubo sufficiently teaches implementation of plotting locations on its map. That's the citation to 86, right? That's correct. And the PTAB also notes that the petitioner did not identify any teaching or suggestion in Okubo that a plotted map is transmitted from the DGBS Station 4, recognizing, again, that Okubo is, in fact, a DGBS system. But isn't the suggestion here, and maybe I'm misunderstanding, that by using Kanishi instead in the server-side plotting that you'd avoid these problems that are identified in connection with the Okushi, whatever the name of the system? That's never an argument that Uber made. And, in fact, the evidence that X1 presented shows exactly the opposite, that in a system such as Okubo you are limited to low data rate transfers. What's the difference between the two systems? I'm sorry? What's the difference between two systems? Well, Okubo discloses a GPS or DGBS system. It doesn't even disclose a cell phone system. Well, that's a problem because I think there's suggestion that it does disclose a cell phone system. The only network— Wait, wait, wait. The problems identified that you're referring to don't relate to a cell phone system, right? The problems that are— No, no, no, answer my question. Is that correct? No, because the only network disclosed— No, no. Let's assume, just accept my hypothetical, let's assume Okushu, whatever it is, discloses a cell phone system as an alternative, okay? Let's assume that. Okay. These problems that you're identifying don't apply to a cell phone system, right? A properly configured cell phone system, put it that way. They would not, but that completely changes what Okubo teaches. Okubo only teaches two-way communications. So our problem here is whether you're right that Okubo doesn't teach a cell phone system as an alternative. Uber, in its petition, when it was arguing— Wait, no, no, answer my question. What we have to decide is whether Okushu teaches a cell phone system, and if it does, you agree that the problems that you identified don't apply to that. Okubo does not teach a cell phone system. Okay, well, that's the question. Okubo only teaches GPS and DGPS, which are low data rate transmissions. In its petition, Uber recognized that, recognized that— So what prevents the combination? I mean, that's what we do in obviousness. We take portions—we've got two pieces of prior art, and we're talking about combining them. Obviously, there might be deficiencies in one of the references, but that's the reason for combining them. Well, we don't combine them because, as the PTAB said, and substantial evidence supports, that system would not work in Okubo. It would not operate. It would not operate to transmit the map data. Data would be lost. It would be incomplete. It simply would not be used. That's why it would not be combined. Okay, thank you. Thank you. No, don't sit down. You still have some time. I have another question. That's okay. That's fine. I want to be clear on this. A GPS system triangulates off a satellite, and the data itself is pretty low rate. That's correct. And you're operating off a base map in the vehicle, which is there. That's correct. And it's been downloaded years ago. Well, some time ago. We don't know when, but yes, it's there. In the past. The transmission of map data is massively more intense. Am I correct on that? It is, absolutely. And the claims require that that data be updated. So you not only have the transmission of a massive amount of map data, you have the updating of that information, which would require repeated transmission of a massive amount of data, which is not possible in the system that Okubo discloses. But it is possible in a cell phone system. Which Okubo is not. Okubo is not a cell phone system. Okay, so we can come back again to whether it was obvious to use a cell phone system. Which is an argument, respectfully, that Uber never made and never provided evidence to support. Uber's argument was that Okubo teaches everything, but implementation details and does not need to be modified. Changing the DGPS system of Okubo is what the board said, a wholesale modification. It completely changes the type of system, the type of data, and how that data would be transmitted. And the evidence supports that that would be unacceptable in the system Okubo actually discloses. To be clear, you can have a GPS system, an app, GPS app on a cell phone, but it's a GPS app. Today you can, yes. Yes you can. Thank you. So I'd like to pick up where we left off with this DGPS argument. First of all, the argument is sort of a red herring, because even if you were to accept the idea that Okubo alone is limited to this DGPS transmission, Kineshi, undisputedly uses... Wait a second. You don't dispute that, do you? I mean, it is limited to GPS. We do dispute that. In fact, we don't think the board could have possibly reached that conclusion. And the reason for that, Your Honor, is that it's undisputed that Okubo uses two-way communications, transmits to the server and then back. And it's also undisputed that DGPS can't do that. It can only broadcast one way. And so X1's argument was essentially that they must be mysteriously proposing to somehow modify DGPS, but that's not the reasonable reading of Okubo. The reasonable reading of Okubo is that there's a cellular network being used for the two-way communications. And it was just so well-known at the time that Okubo didn't need to spell it out. What information is that transmitting? That's where you actually transmit the location data. See, DGPS isn't used for that in Okubo. It's only used to transmit corrections to the raw GPS data. That's what DGPS is, is it's a system for correcting little errors in GPS. And that's what Okubo uses it for. And that's all Okubo says it uses it for. But it's silent about how it's actually doing the two-way transmissions. And we think very clearly the only reasonable reading is that that has to be a cell phone network. But even if you started by saying that even if that were correct... But even if that weren't the case. It's really wrong because Kinesh uses a cellular network. And so the idea when you're combining the references that you have to treat this DGPS feature, if it was even a feature of Okubo, as sort of a fixed property. It becomes a bodily incorporation argument. You're trying to bodily incorporate the server-side plotting of Kinesh into Okubo with making no other changes. But an obvious inquiry is much more expansive and flexible than that under KSR. Did you argue to the board that Okubo was not limited to GPS and DGPS? Yes, we did. And how much data did you tell the board was transmitted? I don't think we got into that level of detail, Your Honor. But we certainly addressed the DGPS argument at length before the board. And the board, I think contrary to what X1 said, never really made any findings one way or the other on that. Well, they seem to have accepted. I mean, the paragraphs of the expert's affidavit preceded 86, 83 and 84, I think. Well, they do cite to it, Your Honor, but it's only in the context of either describing what the argument is and then in their actual analysis they don't come back to it. Or they cite this one paragraph, 86, in their analysis, but they cite it for a totally different proposition. Are you talking about the citation of 86 on 23? On 23, yes. Yes. And then I think counsel for X1 also mentioned the fact that they mentioned DGPS station up higher on the page, appendix 23. And it's true that Okubo calls sort of this intermediary server between its database and its mobile terminals a DGPS station. But that's because DGPS was actually part of the novelty in Okubo, whereas using a cellular network is not. But if you look at that same figure where it says DGPS station, which is on appendix 1145, it shows a two-way arrow going back and forth, which totally contradicts the notion that the only communications it's engaged in is DGPS. Because X1 itself says... Looking at it now, it seems like that's the board's only reference to DGPS. Certainly once it gets past describing the parties' arguments, that's correct, yes. What in Okubo changes the map? Changes the map? Yeah. I think that's sort of where we're going. So, Your Honor, I think that gets into Okubo's lack of discussion of its implementation details, which is not really essential to the argument. I mean, certainly we did point that out as one reason why panacea would be significant, but it wasn't what our argument hinged on. But I do think that's a feature that Okubo doesn't really provide the detail on. It doesn't say exactly where and how it's changing the map. And your argument is that Okubo doesn't have to do that because that's what you get from it. Exactly. I mean, that's why you have obviousness. That's why we combine references and we look at all the prior art as a whole. Unless there are any further questions. Thank you. We thank both sides and the case is submitted.